UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH WITMER, et al.,

                Plaintiffs,

v.

ACUMENT GLOBAL TECHNOLOGIES,
INC., et al.,

                Defendants,

                                            /

CASE NO. 2:08-CV-12795
JUDGE PATRICK J. DUGGAN
MAGISTRATE JUDGE PAUL J. KOMIVES

## **OPINION AND ORDER GRANTING PLAINTIFFS' AUGUST 16, 2010 MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS (Doc. Ent. 78)**

**I.    Opinion**

**A.    Background**

**1.**    On June 30, 2008, plaintiffs filed a complaint based upon the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Doc. Ent. 1 at 2 ¶¶ 2-3, ¶¶ 36-46, ¶¶ 47-52. Defendants are Acument Global Technologies, Platinum Equity and Textron, Inc. Doc. Ent. 1 at 3 ¶¶ 10-12. They filed answers to the complaint on August 11, 2008 and December 1, 2008. Doc. Entries 11, 32, 34.

**2.**    On October 11, 2008, plaintiffs filed a motion for summary judgment as to liability. Doc. Ent. 18. Defendants' November 7, 2008 response relied upon the November 5, 2008 affidavit of John R. Clark. Specifically, defendants noted:

> In 2006, the Company again changed ownership with the sale by Textron Inc. While the transfers of assets and name changes are complicated, simply put, Acument Global Technologies, Inc. assumed substantially all of the assets of

> Textron Fastening Systems, including employment and labor-related obligations as part of the sale by Textron Inc.

Doc. Ent. 22 at 7 (citing Clark Affidavit [Doc. Ent. 22-20] ¶¶ 7-15). Clark specifically attested as follows:

> Acument Fastening Systems LLC employs those individuals previously employed by Textron Fastening Systems Inc. and TFS Fastening Systems LLC. All employees of the Ring Screw Textron Inc. who had been subject to collective bargaining agreements were terminated when the plants for the five divisions were closed all prior to the sale of substantially all of the assets of Ring Screw Textron Inc. in 2006. It has also assumed the liability for payment of health insurance and life insurance benefits for retirees of the former five Ring Screw Works Divisions and for retirees who were employed by Ring Screw Textron Inc. This obligation was assumed on a voluntary basis and not as part of a contractual obligation established by a collective bargaining agreement.

Doc. Ent. 22-20 ¶ 25. *See also* Doc. Ent. 78-2.

Following plaintiffs' November 24, 2008 reply (Doc. Ent. 28), the Court entered its January 26, 2009 opinion and order which, *inter alia,* denied plaintiffs' motion for summary judgment as to liability. Doc. Ent. 47.

**3.** On October 9, 2008 - just before plaintiffs filed the above-mentioned dispositive motion - plaintiffs served their first request for production of documents to defendants. Doc. Ent. 39-3. On December 8, 2008 - after the briefing on the aforementioned dispositive motion was complete but before the Court entered its opinion and order - plaintiffs filed a motion to compel production of documents and for sanctions. Doc. Ent. 39.

This motion was originally noticed for a January 21, 2009 hearing. Doc. Ent. 41. However, the hearing was renoticed on several occasions. Doc. Entries 48, 50, 52, 55, 57, 58, 59, 64, 66.

On August 25, 2009, I entered a stipulated order granting plaintiffs' motion to compel production of documents. Doc. Ent. 68. Therein, the parties agreed that "Defendants [would] assert any applicable objections for the attorney-client privilege in their written responses on or by October 15, 2009 and will produce an attorney-client privilege log on or by September 30, 2009[.]" Doc. Ent. 68 at 2 ¶ 2a.

**B.     The Instant Motion**

John Clark was deposed on May 26, 2010. Doc. Ent. 78-3 (Transcript); Doc. Ent. 80-2 (Transcript). Clark is an Executive Vice President and General Counsel of Acument Fastening Systems, LLC, a subsidiary of Acument Global Technologies. Doc. Ent. 80-2 at 7-8. During the deposition, Clark was asked about Paragraph 25 of his affidavit. Doc. Ent. 80-2 at 107-112. Therein, Clark stated, "[t]here were discussions in writing. Part of my analysis was in writing, yes." Doc. Ent. 80-2 at 110-111 (pp. 109-110).

On July 1, 2010, plaintiffs' counsel wrote to defense counsel asking that he produce, among other things, "the writing to which Mr. Clark referred[.]" Doc. Ent. 78 at 3 ¶ 6; Doc. Ent. 78-4. Plaintiffs' counsel contended that "[n]o additional document request [was] necessary, as this request [was] already covered by Plaintiffs' October 9, 2008 document request," particularly Request Nos. 5, 14, 18 and 21. Doc. Ent. 78-4 at 3; Doc. Ent. 78 at 3 ¶ 7.

On Tuesday, July 6, 2010, defense counsel sent an electronic mail to plaintiffs' counsel stating that he would respond with defense counsel's position that week. Doc. Ent. 78 at 5 ¶ 17; Doc. Ent. 78-10. On Wednesday, August 11, 2010, defense counsel electronically mailed plaintiffs' counsel, stating, "I believe that all of John's communication as General Counsel is

3

subject to the privilege and Acument is not willing to waive that privilege." Doc. Ent. 78 at 5-6 ¶ 18; Doc. Ent. 78-11.

Currently pending before me[1] is plaintiffs' August 16, 2010 motion to compel discovery and for sanctions. Doc. Ent. 78. By their motion, plaintiffs request that the Court enter an order:

(1) compelling production of the written opinion to which Mr. Clark referred in his deposition, as well as any other opinions or interpretations expressed by Mr. Clark concerning whether or not Acument had a contractual or voluntary obligation to provide retiree health care or life insurance to class members, or whether or not the company had a right to modify or terminate such benefits; and

(2) ordering that, if requested by Plaintiffs, Mr. Clark submit to another deposition and answer all questions concerning the subject matter of his affidavit.

(3) Plaintiffs further request an order pursuant to Rule 37(d)(3), that Defendants and their counsel, or both, pay the reasonable expenses, including attorney fees, caused by their failure to produce the requested discovery.

Doc. Ent. 78 at 6.[2]

Defendants have filed a response, and plaintiffs have filed a reply. Doc. Entries 80 and 82. This motion was noticed for a September 22, 2010 hearing. Doc. Ent. 83. On the date set for hearing, attorneys John R. Canzano and Donald A. VanSuilichem appeared in my courtroom.

**C.    Fed. R. Evid. 502**

---

[1]Pending before Judge Duggan is defendants' January 15, 2009 motion for summary judgment (Doc. Ent. 44) and defendants' July 16, 2010 motion (Doc. Ent. 73) to strike plaintiffs' jury demand (Doc. Ent. 1 at 12). Judge Duggan has scheduled the hearing on the motion to strike for October 7, 2010. Doc. Ent. 84.

[2]On August 17, 2010, Judge Duggan referred this motion to me for hearing and determination. Doc. Ent. 79.

4

Fed. R. Evid. 502(a) concerns the attorney-client privilege and work product doctrine, as well as limitations on waiver. With respect to Rule 502 provides:

> When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a) ("Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.").

**D.     Analysis**

**1.**     Plaintiffs' arguments in support of their motion are two-fold. First, they argue, "By Submitting Clark's Affidavit, Defendants Have Waived Any Attorney-Client Privilege Objections to Discovery Regarding the Statements in Clark's Affidavit." Doc. Ent. 78 at 11-14. Second, plaintiffs argue, "Defendants Have Also Waived Their Privilege Objections By Failing To Timely Assert Them." Doc. Ent. 78 at 14-17.

Plaintiffs' motion is based primarily on Fed. R. Civ. P. 37(d) and *Government Guar. Fund of Republic of Finland v. Hyatt Corp.*, 177 F.R.D. 336, 341-342 (D. V.I. 1997) ("By using the Declaration of Michael C. Shindler to support its opposition to the Skopbank Parties' motion for partial summary judgment, Hyatt waived the privilege as to Mr. Shindler's communications relating to the subject matter of the declaration. Hyatt cannot use an officer and active player in its relationship with the Skopbank Parties to put forth facts supporting its opposition and then deny access to his letters and other communications with him on these same subjects because he

5

is an attorney. Hyatt cannot use the privilege to shield from discovery those matters related to the subjects dealt with in its affidavit."). Doc. Ent. 78 at 9.

In response, defendants contend that the information sought in Paragraph (1) "is protected from disclosure by the attorney-client privilege." Doc. Ent. 80 at 1-2. Specifically, they state:

> The documents requested are direct communications from John Clark to provide legal advice to his client, Acument. There has been no waiver of the attorney-client privilege. In fact, John Clark immediately invoked the attorney-client privilege as soon as the questioning in his deposition turned to communications relating to his legal advice to his client. [Exhibit 1-Deposition of John Clark, p. 108-111].

According to defendants, "[t]he only documents of which Plaintiffs seek to have this Court compel disclosure are communications from an attorney to his client rendering legal advice." Doc. Ent. 80 at 2.

Furthermore, defendants contend, "[s]anctions are inappropriate." Doc. Ent. 80 at 3.

**2.** Having considered the motion papers and counsel for the parties' September 22, 2010 oral argument, I conclude that plaintiffs' motion should be granted to the extent it seeks entry of an order "(1) compelling production of the written opinion to which Mr. Clark referred in his deposition, as well as any other opinions or interpretations expressed by Mr. Clark concerning whether or not Acument had a contractual or voluntary obligation to provide retiree health care or life insurance to class members, or whether or not the company had a right to modify or terminate such benefits; and (2) ordering that, if requested by Plaintiffs, Mr. Clark submit to another deposition and answer all questions concerning the subject matter of his affidavit." Doc. Ent. 78 at 6 ¶¶ 1-2.

I reach this conclusion, because I disagree with defendants' assertion that "[p]laintiffs have offered no evidence that any exception to the privilege applies or that Defendants have in any way waived it." Doc. Ent. 80 at 2. During the September 22, 2010 oral argument, defense counsel explained that defendants' assertion of privilege concerns Clark's Fall 2008 legal opinion regarding whether the company had the right to terminate health insurance. *See also* Doc. Ent. 80-2 at 109-110 [Trans. pp. 108-109].[3] Defendants took the position that Clark's November 5, 2008 affidavit did not convey a legal opinion but, rather, was factual.

However, as I noted from the bench, Paragraph 25 of Clark's November 5, 2008 affidavit opines that the obligation to pay insurance benefits was assumed voluntarily rather than as part of a contractual obligation under the Collective Bargaining Agreement (CBA) (Doc. Ent. 78-2 ¶ 25). Furthermore, Clark's May 26, 2010 deposition testimony refers to written discussions/analysis (Doc. Ent. 80-2 at 110-111 [Trans. pp. 109-110]).

Also, I am persuaded by *Government Guar. Fund of Republic of Finland* and plaintiffs' reply, wherein plaintiffs contend that defendants waived the attorney-client privilege by "submitting an affidavit of their General Counsel testifying about matters which they now claim

---

[3]At his May 26, 2010 deposition, when asked about Paragraph 25 of his November 5, 2008 affidavit, Clark explained, "we were -- had, again, voluntarily continued to provide those benefits to those workers, but it wasn't a -- it wasn't a contractual commitment to provide them. It was like many other benefits that we provide, where we have the freedom to, you know, we provide, you know, vision care to our employees in the U.S., and for as long as we are providing them, we are providing them, but it's voluntary. We can terminate those plans if we want to. That is the substance of what that says." Doc. Ent. 80-2 at 107 [Trans. p. 106].

Later, Clark attested, "I think this, you know, basically is pretty clear what it says, and that is, for those workers who may have been covered by a bargaining agreement that had expired, and for which we no longer had any contractual obligation to provide these benefits, that yes, we viewed them as voluntarily provided by us, and that gave us the right to modify them, and to, you know, change them or to terminate them." Doc. Ent. 80-2 at 109 (Trans. p. 108).

are privileged[.]" Doc. Ent. 82 at 2. Defendants waived the attorney-client privilege with regard to the opinions expressed in Clark's affidavit, and plaintiffs are entitled to examine those matters, either by asking for such information during a deposition as described in Paragraph 2 of plaintiffs' request for relief, or by requesting production of documents as described in Paragraph 1 of plaintiffs' request for relief. *See* Fed. R. Evid. 502(a).

3.     Furthermore, plaintiffs' request for "an order pursuant to Rule 37(d)(3),[4] that Defendants and their counsel, or both, pay the reasonable expenses, including attorney fees, caused by their failure to produce the requested discovery[,]" Doc. Ent. 78 at 6 ¶ 3, is granted. I acknowledge defendants' citations to Fed. R. Civ. P. 37(a)(5) and *American Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc. of United States*, 406 F3d 867, 878 (7th Cir. 2005).[5] I further acknowledge their argument that "[t]here is no evidence that Defendants, or their

---

[4]Fed. R. Civ. P. 37(d) concerns a "Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection." With respect to sanctions, Rule 37(d)(3) provides:

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3).

[5]In *American Nat. Bank and Trust Co. of Chicago*, the Seventh Circuit concluded that "the global-disclosure sanction, which forced Equitable to disclose information protected by the attorney-client privilege, constituted an abuse of discretion." *Id*. 406 F.3d at 881. Before arriving at this conclusion, the Court noted that "[s]imply having a good-faith difference of opinion is not sanctionable conduct[,]" and "[e]quitable sought to protect documents for which a good-faith argument in support of privilege could be made, and it did so while treading in an area of privilege law that is generally recognized to be 'especially difficult,' namely, distinguishing in-house counsels' legal advice from their business advice." *Id.*, 406 F.3d at 878-879 (internal footnote omitted) (citing Rice, 1 Attorney Client Privilege in the United States § 5:7).

counsel, have acted in bad faith by zealously protecting documents believed, in good faith, to be within the protection of the attorney-client privilege." Doc. Ent. 80 at 3.

However, plaintiffs reply that defendants "fail[ed] to file timely written objections, fail[ed] to timely file a privilege log pursuant to this Court's August 25, 2009 Order, and fil[ed] privilege logs which were not only untimely but defective and conclusory." Doc. Ent. 82 at 2. Defendants' privilege logs are dated October 1, 2009 and October 15, 2009 (Doc. Ent. 78-9). As plaintiffs pointed out in their August 16, 2010 motion, "[d]efendants have repeatedly failed to assert their objections in a timely fashion." Plaintiffs claim that defendants' failure to respond to the plaintiffs' October 9, 2008 first request for production of documents to defendants (Doc. Ent. 78-5) precipitated the November 2008 letters from plaintiffs' counsel to defense counsel (Doc. Ent. 78-6). Then, plaintiffs claim, they filed their December 8, 2008 motion to compel (Doc. Ent. 78-7), which was followed by the entry of the August 25, 2009 stipulated order (Doc. Ent. 78-8). Doc. Ent. 78 at 14. According to plaintiffs, "[d]efendants waived their attorney-client objection first by failing to file timely objections [to the October 9, 2008 requests] by November 14, 2008; and again when they failed to file a complete privilege log by September 30, 2009 as directed by the Court in its August 25, 2009 Order Granting Plaintiffs' Motion to Compel." Doc. Ent. 78 at 15.

Furthermore, plaintiffs alleged, "[t]he privilege logs were not only late, they were defective." Doc. Ent. 78 at 15 n.3. Fed. R. Civ. P. 26(b)(5) ("Claiming Privilege or Protecting Trial-Preparation Materials"), provides in part:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

9

> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or
> tangible things not produced or disclosed--and do so in a manner
> that, without revealing information itself privileged or protected,
> will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). According to plaintiffs, "[t]he privilege log descriptions are entirely conclusory and do not provide sufficient facts to support a claim of attorney-client privilege." Doc. Ent. 78 at 15 n.3.

In some cases, the descriptions on the October 1, 2009 and October 15, 2009 privilege logs (Doc. Ent. 78-9) do not provide a description from which plaintiffs would be able to assess the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii). For example, Paragraph 2 on the October 1, 2009 privilege log states only, "Letter to Michael W. Bolling, Director, TFS Benefits Center dated March 12, 2003." Doc. Ent. 78-9 at 2 ¶ 2. In another example, the October 14, 2009 privilege log mentions communications not only between defense counsel Van Suilichem and corporate counsel Clark, but also mentions communications to or from Shelley Wagner, Dave Schollhammer, Earl Talos and/or Tim Weir; it is not clear whether communication to or from these individuals would be encompassed by the attorney-client privilege. Doc. Ent. 78-9 at 4-7.

Upon consideration, I conclude there was a procedural lapse by which defendants' assertions of privilege were not asserted timely and/or properly. Therefore, plaintiffs are entitled to a Rule 37 award of attorney fees and costs associated with the preparation and argument of

this motion. Furthermore, if there is a further deposition of Clark on this issue, defense counsel shall pay the court reporter fee.[6]

## II. Order

In accordance with the foregoing opinion, plaintiffs' August 16, 2010 motion to compel discovery and for sanctions (Doc. Ent. 78) is GRANTED. Plaintiffs' counsel shall submit to the Court, with a copy to opposing counsel, an itemized justification for the amount of sanctions awarded by this order. Defense counsel shall submit any response to the Court, with a copy to opposing counsel, within five (5) days of receipt of plaintiffs' submission. Thereafter, the Court will issue an order regarding the amount of sanctions.

---

[6]During the September 22, 2010 oral argument, plaintiffs' counsel requested that the Court rule upon plaintiffs' desire to get information from Clark regarding the "reservation of rights clause." Counsel specifically cited pp. 117-120 (Doc. Ent. 78-3 at 8) of Clark's deposition. For example, plaintiffs' counsel asked Clark, "Did anybody else besides yourself to your knowledge consider any reservation of rights clause in the UAW collective bargaining agreement in making this decision?" and "When did you first become aware of reservation of rights clause in connection with this issue?" Doc. Ent. 78-3 at 8 (Trans. p. 120).

During Clark's May 26, 2010 deposition, he asserted the attorney-client privilege as to certain questions regarding the "reservation of rights clause" in the CBAs. *See* Doc. Ent. 78-3 at 8-9 (Trans. pp. 118-121). Plaintiffs' counsel explained such a clause as "a clause which at least arguably would reserve the right to modify or terminate benefits, including arguably retiree health insurance benefits?" Doc. Ent. 78-3 at 8 (Trans. p. 118).

I note that plaintiffs' August 16, 2010 motion references pp. 106-121 of Clark's deposition transcript (Doc. Ent. 78-3 at 5-9). Doc. Ent. 78 at 2 ¶ 5. Furthermore, several pages of Clark's deposition transcript are attached to plaintiffs' August 16, 2010 motion (Doc. Ent. 78-3 at 1-9 [pp. 5-12, 105-124]).

Notwithstanding these observations, the "reservation of rights clause" is not discussed in the motion itself (Doc. Ent. 78 at 1-18). Furthermore, unlike plaintiffs' reference to Paragraph 25 of Clark's Affidavit (Doc. Ent. 78 at 2 ¶ 4), it is not clear upon which portion of Clark's November 5, 2008 affidavit (Doc. Ent. 78-2 at 1-7) an argument for waiver with respect to the "reservation of rights clause" issue would be based. Perhaps it is also based upon Paragraph 25.

Upon consideration, the parties remain free to discuss whether "reservation of rights" assertion of privilege falls within the relief sought by plaintiffs' August 16, 2010 motion - specifically Paragraph 1 (Doc. Ent. 78 at 6 ¶1). At this time, the Court declines to go further than granting the relief specifically set forth in the motion itself.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

Dated: 9/23/10

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on September 23, 2010.

s/Eddrey Butts
Case Manager