UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH WITMER, JOSEPH OLEX,
RALPH WILLIAMSON, EDWARD
PFANNES, and RAYMOND OWENS, on
behalf of themselves and a class of persons
similarly situated,

    Plaintiffs,

Case No. 08-12795

Honorable Patrick J. Duggan

v.

ACUMENT GLOBAL TECHNOLOGIES,
INC., a Delaware corporation, PLATINUM
EQUITY, a Delaware corporation, and
TEXTRON, INC., a Delaware corporation,

    Defendants.
_____/

**<u>OPINION AND ORDER</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_May 26, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

Plaintiffs Kenneth Witmer, Joseph Olex, Ralph Williamson, Edward Pfannes, and Raymond Owens filed this suit against Acument Global Technologies, Inc. ("Acument"), Platinum Equity, and Textron, Inc. on June 30, 2008, alleging claims under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Before the Court is Plaintiffs' motion for summary judgment as to the liability of Acument, filed

pursuant to Federal Rule of Civil Procedure 56.  Also before the Court is Defendants' motion for summary judgment.  The matter has been fully briefed, and on April 7, 2011, the Court informed the parties that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons stated below, the Court grants Defendants' motion and denies Plaintiffs' motion.

## I. Factual and Procedural Background

The parties do not seem to dispute the facts of this case.  Ring Screw Works owned and operated five divisions, known as Ferndale Fastener, Ring Screw, Steel Processing, Heat Treat, and Warren Processing.  At all times relevant, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America Local No. 771 ("UAW") represented the workers of Ring Screw Works.  Between 1968 and 2004, Ring Screw Works and the UAW entered into a series of collective bargaining agreements ("CBAs") for each of the five divisions.  These CBAs contained similar language relating to retirement income and the provision of certain benefits for retirees, including health care, life insurance, and prescription drugs.

Ring Screw Works has since been acquired several times.  In 1998, Textron, Inc. acquired Ring Screw Works, which was renamed Ring Screw Textron, Inc.  In 2001, Ring Screw Textron, Inc. became a subsidiary of Textron Fastening Systems, Inc.  Finally, in 2006, Acument acquired substantially all of the assets and liabilities of Textron Fastening Systems, Inc.  Although the Acument purchase was a complex transaction, Acument has conceded that it acquired the employment and labor-related obligations of Textron Fastening Systems, Inc.  *See* Clark Aff. ¶¶ 6-14, Pls.' Br. Supp. Mot. Summ. J. Ex. 78.

Ring Screw Works gradually expanded the benefits provided to its employees through successive CBAs. In 1955, Ring Screw Works established the "Ring Screw Works Retirement Income Plan" for its employees. This plan was revised and restated several times, and both Textron and Acument continued this plan following their respective acquisitions of Ring Screw Works. In 1968, Ring Screw Works began providing life insurance for retirees through the various CBAs. *See*, *e.g.*, Ferndale Fastener 1968 CBA App. C, Pls.' Br. Supp. Mot. Summ. J. Ex. 12. Beginning with the 1977 CBAs, Ring Screw Works began providing health care benefits to its retirees. *See* Ring Screw 1977 CBA App. D, Pls.' Br. Supp. Mot. Summ. J. Ex. 2; *see also* Ferndale Fastener 1977 CBA App. C, Pls.' Br. Supp. Mot. Summ. J. Ex. 15.

Ring Screw Works and its successors-in-interest have closed several of the plants or divisions identified above. On May 9, 2003, Ring Screw Textron, Inc. and the UAW entered into a Plant Closing Agreement regarding the Ferndale Fastener plant. The parties also signed an addendum to the Plant Closing Agreement relating to five plant employees who had yet to attain minimum retirement age at the time of the closing. The parties agreed that those five employees would be eligible for retirement benefits after the closing of Ferndale Fastener, provided that they complied with the Plant Closing Agreement.

The Ring Screw 2004 CBA, negotiated in February 2004, contained articles relating to the expected closure of the Ring Screw plant between September 1, 2004 and December 31, 2004. The parties also negotiated a Memorandum of Understanding ("MOU") relating to four employees nearing retirement age, providing that those four employees could work at other facilities and then retire under the Ring Screw CBA.

Acument closed the Heat Treat division pursuant to a Plant Closing Agreement that it entered into with the UAW on June 13, 2007. *See* Heat Treat Division Plant Closing Agreement, Pls.' Br. Supp. Mot. Summ. J. Ex. 53.

On October 11, 2007, Acument informed its retirees that it intended to change its health care benefits plan to one with increased deductibles and co-payments, effective January 1, 2008. On May 23, 2008, Acument informed retirees that it planned to terminate retirees' life insurance and health care benefits on July 31, 2008. Acument later extended health insurance coverage for UAW retirees until October 31, 2008.

The named Plaintiffs filed this action on June 30, 2008, seeking declaratory relief, damages, and reinstatement of benefits to pre-2008 levels. On January 26, 2009, this Court entered an Order certifying a plaintiff class of 64 retirees, surviving spouses, and dependent children. Plaintiffs and Defendants filed cross-motions for summary judgment on December 17, 2010.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Discussion

**A. Governing Law**

Count I of Plaintiffs' Complaint asserts a claim under Section 301 of the LMRA, 29 U.S.C. § 185, seeking damages as well as declaratory and injunctive relief for breach of a collective bargaining agreement.[1] Plaintiffs claim that their health care and life insurance

---

[1] Section 301 provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

5

benefits vested, and thus cannot be terminated without Plaintiffs' express consent. *See Allied Chem. & Alkali Workers, Local No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 182 n.20, 92 S. Ct. 383, 399 n.20 (1971).

"A retiree health care insurance benefit plan is a welfare benefit plan under ERISA." *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006). "Unlike pension benefits, 'there is no statutory right to lifetime health benefits.'" *Id.* (quoting *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996)). "If a welfare benefit has not vested, 'after a CBA expires, an employer is generally free to modify or terminate any retiree medical benefits that the employer provided pursuant to that CBA.'" *Id.* (quoting *Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 857 (E.D. Mich. 1998)). The parties may agree, however, to vest a welfare benefit. *Id.*

"[I]n determining the intent of the parties to a CBA, 'basic rules of contract interpretation apply.'" *Id.* (quoting *Golden*, 73 F.3d at 654). "[T]he court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent." *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983). "The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion." *Id.* "The court should also interpret each provision in question as part of the integrated whole." *Id.* "If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties." *Id.* "As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises." *Id.* at 1480. "Where ambiguities exist, the court may look to other words and phrases in the

6

collective bargaining agreement for guidance." *Id.* "Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy." *Id.*

**B. Application**

Although Plaintiffs retired under a number of different CBAs, the parties do not dispute that these CBAs use identical language with respect to retirees' health care and life insurance benefits. As Plaintiffs begin with the Ring Screw 2000 CBA in stating their arguments, the Court will do likewise in applying the principles set forth above.

Appendix E of the Ring Screw 2000 CBA, entitled, "Pension Plan," explains the benefits provided to retirees. What the parties refer to as the "preamble" of Appendix E provides:

> Subject to approval of the Board of Directors and Stockholders, the Company will revise the pension plan established in 1955, hereinafter referred to as the "Plan", as follows:
>
> 1. An insurance company shall be designated by the Company, and a contract executed between the Company and such insurance company, under the terms of which, a pension fund shall be established to receive and hold contributions payable by the Company, interest, and other income, and to pay the pensions provided by the Plan.
>
> 2. The Company by payment of the contributions or amounts provided in the above mentioned insurance company contract shall be relieved of any further liability, and pensions shall be payable only from the insured fund.
>
> 3. In the event of termination of the Plan, there shall be no liability or obligation on the part of the Company to make any further contributions to the pension fund. No liability for the payment of pension benefits under the Plan shall be imposed upon the Company, the Officers, Directors, or Stockholders of the Company.
>
> 4. The Company reserves the right to amend, modify, suspend, or terminate

> the Plan by action of its Board of Directors provided, however, that no such action shall alter the Plan or its operation, except as may be required by the Internal Revenue Service for the purpose of meeting conditions for qualification and tax deductions under Sections 401, 404, and 501(a) of the Internal Revenue Code, in respect of employees who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement pertaining to pension benefits as long as any such agreement is in effect.
>
> 5. Principal provisions of the pension plan are shown below, but the individual booklets which will be furnished each participant contain full information and will be based on the contract entered into with the insurance company.

Pls.' Br. Supp. Mot. Summ. J. Ex. 10 at 21-22. Appendix E continues with sections detailing the pension plan's substantive provisions: Eligibility, Normal Retirement Date, Early Retirement, Retiree Medical Coverage, Retirement Income, Vested Pension Rights, Disability Income, and Continued Life Insurance. The "Retiree Medical Coverage" section provides, in pertinent part:

> Continuous health insurance and prescription drug coverage will be provided to current retirees and those who elect early retirement with fifteen (15) years of service at age sixty-two (62) or twenty-five (25) years of service at age sixty (60) and regular retirement with fifteen (15) years of service who are sixty-five (65) years of age or older. This coverage is provided for the spouse of retirees only during the life of the retiree, except as provided below.

*Id.* at 22. The "Continued Life Insurance" section states:

> Continued life insurance shall be provided for employees who are retired under the pension plan in the amount of $12,000.00. Retired employees will be permitted to purchase additional insurance by buying an individual policy up to a maximum of $38,000 currently without a medical examination at the insurance company's rates.

*Id.* at 24.

Defendants argue that paragraph four of the preamble reserves Acument's right to

8

terminate retirees' medical care and life insurance benefits. The Court agrees. Paragraph four reserves the right to amend, modify, suspend, or terminate "the Plan." The "Plan" is defined at the beginning of the preamble as "the pension plan established in 1955." Paragraph five, which immediately follows the reservation of rights clause, states that the "[p]rincipal provisions of the pension plan are shown below," and the sections following this paragraph include both "Retiree Medical Coverage" and "Continued Life Insurance." The reservation of rights clause does not exempt any specific provisions of the pension plan, and therefore applies to *all* of the provisions "shown below." As the language used is clear and unambiguous, the Court need not resort to extrinsic evidence to determine the parties' intent. The Court notes that the reservation of rights clause granted broad discretion to terminate benefits; such discretion is plainly inconsistent with the alleged intent to create vested benefits. *See Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir. 2000) (holding that where a broad reservation of rights applied to retirees' benefits, those benefits had not vested). Because the reservation of rights clause applies to the provisions for retiree medical coverage and continued life insurance, Acument acted within its rights in terminating those benefits. Accordingly, the Court concludes that Plaintiffs' LMRA claim fails as a matter of law.

## C. ERISA Claim

Plaintiffs have conceded that their claim under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1102(a)(1)(B), is "derivative and dependent on the resolution of" their LMRA claim. Pls.' Br. Supp. Mot. Summ. J. 25. Where there has been no agreement to vest benefits under a welfare benefit plan, Defendants cannot be held liable under ERISA for

termination of those benefits.  *See Maurer*, 212 F.3d at 914; *see also Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).  Accordingly, the Court grants summary judgment for Defendants on Plaintiffs' ERISA claim.

### IV. Plaintiffs' Arguments Regarding the Vesting of Benefits

Plaintiffs have raised a number of detailed arguments in support of their claims, and the Court believes it is appropriate to address those arguments.  First, Plaintiffs argue that the CBAs unambiguously provided for vested benefits.  Plaintiffs note that the CBAs provide for "continuous" health care benefits, citing Sixth Circuit decisions holding that similar language expressed the intent to vest benefits.  *See Noe v. PolyOne Corp.*, 520 F.3d 548 (6th Cir. 2008); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir. 1985).  This argument ignores the reservation of rights provision, which is completely inconsistent with an intent to vest benefits.  The agreements at issue in *Noe* and *Policy* did not contain such a reservation of rights.  In those cases, the courts had to determine whether retirees' benefits survived termination of collective bargaining agreements.  *See Noe*, 520 F.3d at 554; *Policy*, 770 F.2d at 614-15.  Although the courts in both cases held that retirees' benefits survived termination of the CBA, that is irrelevant here.  The reservation of rights clause prevents the vesting of benefits.

Plaintiffs contend that the relevant Plant Closing Agreements provide for continuing benefits after termination of the CBA.  The parties' Plant Closing Agreements certainly indicate that termination of the CBA does not terminate retirees' benefits.  But this does not mean that those benefits are *vested*.  The Ferndale Fastener Plant Closing Agreement Addendum provides that the five identified employees "will be considered eligible for

retirement benefits as defined in Appendix E of the Collective Bargaining Agreement, including retiree medical and life insurance benefits regardless of termination or plant closure." Pls.' Br. Supp. Mot. Summ. J. Ex. 44 at 7. Thus, the employees were merely eligible for benefits, and the Plant Closing Agreement incorporated the provisions of Appendix E of the Ferndale Fastener 2000 CBA, which included an identical reservation of rights clause with respect to the pension plan. *See* Ferndale Fastener 2000 CBA, Pls.' Br. Supp. Mot. Summ. J. Ex. 23 at 36. The Ring Screw and Heat Treat plant closure provisions incorporate the same reservation of rights, and thus failed to vest benefits. *See* Ring Screw 2004 CBA Plant Closure Article II, Pls.' Br. Supp. Mot. Summ. J. Ex. 11; Heat Treat Plant Closing Agreement Article II, Pls.' Br. Supp. Mot. Summ. J. Ex. 53 at 3.

     Plaintiffs contend that extrinsic evidence confirms the parties' intent to vest benefits. Plaintiffs cite the continuation of benefits by Ring Screw and Acument after termination of the relevant CBAs, arguing that this conduct is evidence that the parties understood the CBAs to have vested retirees' health care and life insurance benefits. Acument's conduct fails to establish vesting, as it is entirely consistent with a reservation of rights. Acument did not exercise its right to amend, modify, suspend, or terminate retirees' benefits until late 2007, but the Court cannot presume that Acument's continued provision of benefits waived this right, and Plaintiffs have failed to cite any legal authority holding that delay in exercising one's contractual right constitutes waiver. Plaintiffs also cite correspondence from Acument's employees regarding their retirement benefits, arguing that this is evidence of Acument's understanding of the duration of benefits. While these letters indicate that Acument understood Plaintiffs' benefits to extend for the lifetime of retirees,

11

the letters fail to address Acument's reserved right to amend, modify, suspend, or terminate those benefits. The Court therefore cannot conclude that the letters establish vested benefits. Plaintiffs' brief relies extensively on the declaration of Patrick McTigue, former Human Resources Director, General Counsel, and Director of Ring Screw Works, but such extrinsic evidence should not be used to interpret an otherwise unambiguous contract. Plaintiffs point to the sale price obtained by Ring Screw shareholders when they sold the business to Textron, Inc. as extrinsic evidence that Textron was obligated to provide retirees with lifetime benefits. The Court concludes, however, that a reduced sale price is insufficient to establish waiver of Acument's reserved right to amend, modify, suspend, or terminate benefits.

Plaintiffs argue that the reservation of rights provision in each CBA applies only to retirement income. Plaintiffs contend that Defendants have admitted that the pension plan is comprised of the "Ring Screw Works Retirement Income Plan," and contains no provisions relating to retirees' medical care or life insurance. Pls.' Br. Supp. Mot. Summ. J. 37. Plaintiffs overstate Defendants' admissions. Defendants have not admitted that the Retirement Income Plan is the "Plan" referenced in the reservation of rights clauses. Rather, Defendants maintain that the reservation of rights clauses refer to the pension plan provisions of each CBA, which include provisions relating to retirees' medical care and life insurance. *Id.* ¶¶ 29, 50. Plaintiffs assert that Defendants' interpretation would require the phrase "the Plan" to take on different meanings throughout the "Pension Plan" Appendix. Although "the Plan," as Defendants believe it should be defined, requires payments to retirees, the Court is unaware of any reason to restrict the scope of "the Plan"

12

to such payments. The "Pension Plan" Appendix contained in each CBA must be read as a whole, and a more inclusive definition of the phrase "the Plan" accomplishes this. To define the "the Plan" narrowly, as Plaintiffs advocate, would render the fifth paragraph of the preamble meaningless. The fifth paragraph purports to define the scope of the "pension plan," and immediately follows the reservation of rights clause, stating that "[p]rincipal provisions of the pension plan are shown below . . .." The sections following this paragraph include "Retiree Medical Coverage" and "Continued Life Insurance." Plaintiffs essentially ask the Court to ignore the preamble's fifth paragraph, but proper interpretation of the CBA will not render any of its provisions nugatory. *Yard-Man, Inc.*, 716 F.2d at 1480. When the "Pension Plan" Appendix is read as a whole, it is clear that the pension plan referred to throughout *includes* retirement income, but is not *restricted* to retirement income. Rather, the pension plan also includes retirees' medical care and life insurance. Defendants' reservation of rights therefore applies to both of these benefits.

Plaintiffs contend that the parties' bargaining history and the evolution of the pension plan support a narrowly-defined reservation of rights clause. Plaintiffs assert that the earliest CBAs provided no medical care or life insurance benefits for retirees, yet the preamble language of each "Pension Plan" Appendix has remained unchanged. Plaintiffs therefore conclude that the preamble language refers solely to the Retirement Income Plan. Even the earliest CBAs, however, stated in paragraph five of the preamble that the provisions of the pension plan were "shown below." *See* Ferndale Fastener 1968 CBA App. C ¶ 5, Pls.' Br. Supp. Mot. Summ. J. Ex. 12 at 28. Thus, the parties' bargaining history establishes that they listed below paragraph five any "pension plan" provisions

13

subject to the reservation of rights. The Court also notes that successive CBAs added the provisions relating to retirees' medical care and life insurance benefits under paragraph five of the "Pension Plan" Appendix, rather than creating separate Appendices for those provisions. This lends additional support to Defendants' position.

Plaintiffs' next contention is that in several CBAs, the "Pension Plan" Appendix included provisions for vacation, attendance bonuses, bereavement pay, and jury duty pay. *See, e.g.*, Ring Screw 1977 CBA App. D, Pls.' Br. Supp. Mot. Summ. J. Ex. 2 at 32-35. Plaintiffs argue that because these provisions are unrelated to retiree benefits, the Court should not conclude that all provisions in each "Pension Plan" Appendix are subject to the reservation of rights. Plaintiffs' argument is undermined by the structure of recent CBAs. These provisions were removed from the "Pension Plan" Appendix, and placed in separate Appendices. *See*, *e.g.*, Ring Screw 1988 CBA Apps. C-F, Pls.' Br. Supp. Mot. Summ. J. Ex. 6 at 19-22. The parties tellingly left the "Retiree Medical Coverage" and "Continued Life Insurance" provisions in the "Pension Plan" Appendix. *Id.* at 18-19. Given the parties' subsequent exclusion of vacation, attendance bonus, jury duty pay, and bereavement pay provisions from the "Pension Plan" appendices, the placement of those terms in early CBAs can only be seen as the result of careless drafting, rather than an intent to vest benefits.

Finally, Plaintiffs argue that durational limits on retiree medical coverage added to the Steel Processing 1997 CBA would be redundant under Defendants' interpretation. The Steel Processing 1997 CBA added language stating that retirees would be provided health insurance and prescription drug coverage "[d]uring the term of this agreement," while the

14

previous CBA had provided that such coverage would be "[c]ontinuous." Steel Processing 1997 CBA App. B, Pls.' Br. Supp. Mot. Summ. J. Ex. 26 at 20. While this change limited one portion of the pension plan to the term of the CBA, it did not make the reservation of rights provision meaningless, as Plaintiffs contend. Other benefits included in the pension plan, such as retirees' life insurance, were not similarly limited to the term of the CBA. The reserved right allowed Defendants to amend, modify, suspend, or terminate those benefits, which were otherwise unaffected by the change to retirees' medical care benefits.

## V. Conclusion

The relevant CBAs unambiguously provided Acument with the right to amend, modify, suspend, or terminate retirees' health care and life insurance benefits. The Court therefore concludes that Plaintiffs' LMRA and ERISA claims fail as a matter of law.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED;**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

                                                        s/PATRICK J. DUGGAN
                                                        UNITED STATES DISTRICT JUDGE

Copies to:

John R. Canzano, Esq.
Roger J. McClow, Esq.
Donald A. Van Suilichem, Esq.
Kelly A. Van Suilichem, Esq.